Filed 11/25/15  Thomas v. Bank of America CA1/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| JOJI THOMAS et al.,<br><br>  Plaintiffs and Appellants,<br><br>v.<br><br>BANK OF AMERICA N.A.,<br><br>  Defendant and Respondent. | A142224<br><br>(Contra Costa County<br>Super. Ct. No. MSC1300194) |

Joji Thomas and Bindu Varghese defaulted on their mortgage payments to Bank of America N.A. (Bank of America).  They sent Bank of America an amount equaling the total of the past payments due to have their loan reinstated.  Bank of America returned the payment, as the sum did not include attorney fees and other expenses the bank incurred as a result of the default.  Subsequently, Bank of America sold the home through a nonjudicial foreclosure.

Thomas and Varghese sued Bank of America; their claims included breach of contract and promissory estoppel.  They asserted that an agent of Bank of America orally told them that the bank was waiving the attorney fees and other expenses related to their default and that Bank of America was obligated to reinstate their loan for the sum they submitted.  They alleged that Bank of America wrongfully and prematurely foreclosed on their property.

Bank of America demurred to Thomas and Varghese's second amended complaint.  The bank argued, among other things, that it did not make any enforceable promise to waive the attorney fees and other foreclosure expenses.  The trial court

1

sustained the demurrer without leave to amend and dismissed the second amended complaint. Thomas and Varghese appeal, contending that their second amended complaint sufficiently pled breach of contract and promissory estoppel claims or, alternatively, the trial court should have granted their request to file their proposed third amended complaint, which included additional factual allegations and new causes of action based on the bank's violating various statutes. We conclude that Thomas and Varghese have not stated a cause of action for breach of contract or promissory estoppel but they could amend to state a claim for promissory estoppel based on Bank of America's promise that the foreclosure sale was being postponed. Accordingly, the trial court abused its discretion in denying them an opportunity to amend.

## BACKGROUND

On July 2, 2009, Thomas and Varghese obtained a loan from Bank of America to refinance their real property in San Ramon, California (the property). The loan was evidenced by a promissory note for $411,200 (the Note), and secured by a deed of trust identifying Bank of America as the lender and beneficiary, and PRLAP, Inc. (PRLAP), as the trustee. The Note had a fixed interest rate of 4.875 percent; the monthly payment due the first of each month was $2,176.11.

The deed of trust provided that Thomas and Varghese "shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note." The borrowers under the terms of the deed of trust could choose whether to establish an escrow account when taking out their loan. In the present case, both parties agree that Thomas and Varghese elected to pay the property taxes and insurance directly and did not set up an escrow account.

The deed of trust specified that if Thomas and Varghese failed "to perform the covenants and agreements contained in this Security Instrument, . . . [l]ender's actions can include, . . . paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument . . . . [¶] Any amounts disbursed by Lender under this Section . . . shall become additional debt of Borrower secured by this Security Instrument."

2

The borrower had a right to reinstate after acceleration under the terms of the deed of trust. It specified: "If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued . . . . Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument . . . ."

In 2009, Thomas lost his job, and Thomas and Varghese became delinquent on their loan in 2010. In November 2010, Bank of America and Thomas and Varghese entered into a loan modification agreement. This agreement set out the unpaid principal as $429,823.84, and the fixed interest rate as 4 percent; it reduced the monthly payment to $1,796.40. It stated, "Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and the Borrower and Lender will be bound by, and comply with, all terms and provisions thereof, as amended by this Agreement."

On November 16, 2010, Thomas and Varghese spoke with Chusherrey Parker with Bank of America about their concerns that the bank calculations and accounting were incorrect. She responded that accounting would review the numbers and she would call them back. Thomas memorialized the conversation in a letter dated November 17, 2010, which he mailed to Bank of America.

Thomas and Varghese initially paid their lowered mortgage but they defaulted in November 2011. Bank of America issued a notice of intent to accelerate on December 12, 2011. The notice indicated that Thomas and Varghese owed $6,395.40 for monthly charges and $89.82 for late charges, for a total of $6,485.22.

In February 2012, Quality Loan Servicing Corporation (Quality), acting as an agent for Bank of America, issued a substitution of trustee and became the new trustee under the deed of trust. Quality's notice of default signed March 1, 2012, advised

3

Thomas and Varghese of their failure to pay the escrow items.  On March 5, 2012, Quality, as trustee, recorded a notice of default and election to sell the property under the deed of trust.  The notice stated that the amount in default was $7,173.72.

On June 16, 2012, Thomas and Varghese sent a letter to Paul Cano, customer relations manager for Bank of America.  They requested either a temporary forbearance agreement or a repayment plan where they would make their regular mortgage payments and repay the arrearages on the mortgage over a three-year period.

Thomas and Varghese received a reinstatement calculation from Bank of America, which was dated July 7, 2012.  It listed four monthly payments due at $3,197.70 per month ($12,790.80) and five monthly payments due at $2,997.41 ($14,987.05) for a total of $27,777.85.  It set forth various fees, including a property inspection fee ($20), foreclosure attorney/trustee fees ($775), foreclosure expenses ($2,720.75), and other miscellaneous fees ($350) for a sum of $3,865.75.  The total due was $31,643.60.  Below the total due, the document provided that the total fees waived equaled 0.  The net total due, according to the document, was $31,643.60.  An asterisk was placed next to the "Net Total Due" and "Total Due," and below the calculations the document provided:  "*The Net Total Due reflects the waiver of Foreclosure Attorney/Trustee Fees and/or Title Fees (included within Foreclosure Expense) incurred in processing the foreclosure.  This waiver is to assist you in bringing your loan current and is available if you pay the full Net Total Due.  However, if you only pay a portion of the Net Total Due or require other assistance in bringing your loan current, these fees will not be waived.  You then will be required to pay the Total Due."

Thomas telephoned Bank of America and sent a follow-up letter stating that the reinstatement calculation he received indicated that the attorney/trustee fees and title fees were being waived but this waiver was not reflected in the amount under the "Net Total Due" or the 0 placed next to the amount of fees waived.  He requested a revision to incorporate the waiver of $3,865.75 for a net total due of $27,777.85.

Bank of America sent Thomas and Varghese a modified reinstatement calculation dated July 13, 2012.  This calculation included a property inspection fee of $20,

foreclosure attorney/trustee fees of $775, and foreclosure expenses of $1,383.25 ($2,178.25), for a net total due of $29,956.10 ($27,777.85 + $2,178.25). It included the same asterisks and language next to the asterisk as in the reinstatement calculation dated July 7, 2012.

Quality sent Thomas and Varghese a letter dated July 20, 2012, notifying them of a sale scheduled for July 30, 2012. The letter stated that the reinstatement fees as of the date of the letter were $28,968.60. It indicated that the past payments due equaled $27,777.85, and there was an advance fee of $20 and foreclosure fees and costs of $2,508.25 ($30,306.10). It deducted from the total $1,337.50 for "Payment Received From Servicer" ($30,306.10 - $1,337.50 = $28.968.60).

On July 26, 2012, Cano told Thomas on the telephone that Bank of America would waive the foreclosure fees and advised Thomas and Varghese to send a check for the amount of the past payments due. The following morning, Thomas and Varghese sent a certified check in the amount of $27,777.85, the amount of past payments due, to Bank of America. The afternoon of July 27, Cano called Thomas and Varghese to inform them that his manager instructed him to contact them and tell them they had to pay attorney and trustee fees before 3:00 p.m. that day.

On July 30, 2012, Thomas wrote to the President of Bank of America. He stated that the property had been scheduled for foreclosure on June 29, 2012, and he had received a one-month extension. He noted that the reinstatement calculation from Bank of America contained what he perceived was in inconsistency regarding the actual calculations and the language indicating the foreclosure fees had been waived. He said that he had been advised that the foreclosure fees had been waived and he was to pay the amount owed by certified check, which he did. The next day he was told that he had to pay attorney and trustee fees before 3:00 p.m. that day, and he felt this "was some sort of trap." He noted that he sold his car to raise funds to pay off the loan and Bank of America had not responded to his letters or faxes.

5

Bank of America did not cash the check for $27,777.85 and returned it as being insufficient to reinstate the loan.[1]  Thomas and Varghese wrote numerous letters to Bank of America requesting an analysis of the reinstatement calculation and advising the bank about their payment of $27,777.85.

On October 5, 2012, Ivory Carson at Bank of America telephoned Thomas and Varghese and informed them that their cashier's check in the amount of $27,777.85 had been returned to them on July 30, 2012.  In October, Thomas and Varghese were told by Carson that the foreclosure status of their home "was 'taken away.' "  Also in October, Carson disclosed in a telephone conversation with Thomas and Varghese that Bank of America's system was not showing a tracking number or letter showing the date of the mailing of their cashier's check to them.

In December 2012, Quality informed Consumer Finance Protection Bureau that Bank of America had advised it that the funds sent by Thomas and Varghese were less than half of the amount due in July 2012, and the funds had been returned on August 9, 2012.  On December 17, 2012, Quality foreclosed and a deed of sale was recorded conveying the property to RWW Properties, LLC.

On December 18, 2012, Carson told Thomas and Varghese over the telephone that the foreclosure sale of the property had occurred on December 17, 2012, and Bank of America had failed to enter a code on the system to show that the loan was under active review.  She stated that she sent a request to the foreclosure department to rescind the sale, which was, according to Carson, due to Bank of America's error.  The following day, Thomas and Varghese sent a letter to Bank of America and Carson thanking them for trying to reverse the sale, which they asserted occurred because of Bank of America's mistake.

---

[1]  In their reply brief, Thomas and Varghese state that they "still have not received the allegedly returned check . . . ."  At oral argument, the court permitted Thomas and Varghese to submit an additional one-page document referring to the pages in the appellate record indicating that they did not receive the returned check.  At this stage in the proceedings, the record does not establish that Thomas and Varghese received the returned check.

6

On December 20, 2012, Bank of America sent a letter to Thomas and Varghese advising them that the loan modification request was rejected. The letter stated that Thomas and Varghese should contact Bank of America to avoid foreclosure.

Thomas and Varghese filed a lawsuit against Bank of America and Quality on January 31, 2013. Thomas and Varghese alleged causes of action for declaratory relief, negligent misrepresentation, "damages," violation of California's Rosenthal Fair Debt Collection Practices Act, accounting, and injunctive relief. They filed a first amended complaint against Bank of America and Quality on February 13, 2013, and, in addition to the six causes of action set forth in their original complaint, they added three claims for breach of contract or in the alternative promissory estoppel, negligence, and rescission of the trustee's sale. Thomas and Varghese alleged that Cano told them that Bank of America would accept less than the full amount to cure the default and reinstate the loan, and that Bank of America improperly rejected their reinstatement tender and foreclosed on their property.

Bank of America demurred to the first amended complaint. The trial court sustained the demurrer with leave to amend the cause of action for breach of contract or promissory estoppel. It sustained the demurrer without leave to amend against the eight other causes of action. The court advised that it was permitting Thomas and Varghese one opportunity to amend to state separate causes of action for breach of contract and promissory estoppel. With regard to the breach of contract claim, the court explained that a mortgage or deed of trust comes within the statute of frauds and an agreement to modify such a contract also is subject to the statute of frauds. The court admonished the following regarding promissory estoppel: "As a general rule, a gratuitous oral promise to postpone a foreclosure sale or to allow a borrower to delay monthly payments is unenforceable." It added that "estoppel cannot be established from preliminary discussions and negotiations."

On August 16, 2013, Thomas and Varghese filed a second amended complaint (SAC) against Bank of America and Quality for breach of contract and promissory

7

estoppel.[2]  Under their breach of contract claim, they alleged that they tendered the reinstatement amount of $27,777.85, and Bank of America breached the loan agreement when it, among other things, did not accept the lesser amount.  They claimed that Bank of America also breached the Note and modification of the loan agreement when the bank failed to provide them with notice that it was revoking the waiver of escrow items, improperly increased the monthly payment from $1,796.40 to $3,197.70, filed an incorrect notice of default, improperly foreclosed on the property, and provided an incorrect reinstatement calculation.

Thomas and Varghese asserted under their promissory estoppel cause of action that the loan agreement included a promise that Bank of America "would accept a reinstatement amount from [them] to prevent foreclosure."  They further alleged that the bank's reinstatement calculation on July 13, 2012, and Thomas's conversation with Cano included a promise to waive foreclosure attorney/trust fees and title fees and Thomas and Varghese relied on these promises to their detriment.

In September 2013, Bank of America demurred to the SAC.  Two months later, on December 16, 2013, Thomas and Varghese filed a motion for leave to file a third amended complaint.  The proposed third amended complaint included the breach of contract and promissory estoppel claims and added causes of action for breach of the implied agreement, slander of title, wrongful foreclosure, violations of various statutes, and injunctive relief.

The trial court held a hearing on Bank of America's demurrer and the request by Thomas and Varghese to file a third amended complaint.  On May 9, 2014, the court filed its order sustaining Bank of America's demurrer without leave to amend, and denying Thomas and Varghese's motion for leave to file a third amended complaint.  The court explained that the breach of contract claim failed because Thomas and Varghese "failed to sufficiently allege their performance or excuse for nonperformance.  Additionally, a

---

[2]  Quality is not a party to this appeal.  RWW Properties, LLC, was added as a defendant, and it is not a party to this appeal.

8

mortgage or deed of trust comes within the statute of frauds. [Citation.] An agreement to modify a contract that is subject to the statute of frauds is also subject to the statute of frauds. [Citation.]" The trial court ruled that "a gratuitous oral promise to postpone a foreclosure sale or to allow a borrower to delay monthly payments is unenforceable," and therefore Thomas and Varghese could not state a cause of action for promissory estoppel. The court added that Thomas and Varghese "failed to sufficiently allege a promise clear and unambiguous in its terms."

The court entered judgment dismissing the lawsuit against Bank of America and Thomas and Varghese filed a timely notice of appeal.

## DISCUSSION

### I. *Standard of Review*

"On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the standard of review is well settled. The reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded. [Citations.] The court does not, however, assume the truth of contentions, deductions or conclusions of law. [Citation.] The judgment must be affirmed 'if any one of the several grounds of demurrer is well taken. [Citations.]' [Citation.] However, it is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory. [Citation.] And it is an abuse of discretion to sustain a demurrer without leave to amend if the plaintiff shows there is a reasonable possibility any defect identified by the defendant can be cured by amendment. [Citation.]" (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966-967.)

### II. *Breach of Contract*

Thomas and Varghese contend that their SAC alleged facts sufficient to state a claim for breach of contract. The elements of a breach of contract cause of action are: "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) resulting damages to the plaintiff." (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 821.) While the

9

performance of an allegation "can be satisfied by allegations in general terms" (*Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1389), an excuse for nonperformance must be pleaded specifically. (See *Durell v. Sharp Healthcare* (2010) 183 Cal.App.4th 1350, 1367.)

In the present case, Thomas and Varghese admit in their SAC that Thomas lost his job in 2009 and, in November 2011, they failed to make their monthly payment of $1,796.40 under the loan modification agreement. They maintain that they had a right to reinstatement under the deed of trust.

The deed of trust specified that Thomas and Varghese had a right to reinstatement after acceleration of the loan if they paid Bank of America all sums that were due; they cured any default; and paid "all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting [Bank of America's] interest in the Property and rights under this Security Instrument . . . ." The deed of trust provided that in the event that Thomas and Varghese failed "to perform the covenants and agreements contained in [the] Security Agreement," Bank of America could pay "reasonable attorneys' fees to protect its interest in the Property" and any sum paid "shall become additional debt of [Thomas and Varghese] secured by this Security Instrument."

Thomas and Varghese contend that they performed when they sent Bank of America $27,777.85 to reinstate the loan. Additionally, they claim that Bank of America breached the Note, deed of trust, and loan modification agreement, which excused their performance.

Bank of America does not dispute that Thomas and Varghese had a right to reinstate the loan but maintains that they never paid the reinstatement amount of $29,956.10; thus, according to Bank of America, Thomas and Varghese did not perform as obligated under the Note, deed of trust, and loan modification agreement. Bank of America argues that it did not breach any contract and therefore Thomas and Varghese have no excuse for their nonperformance.

10

**A.** *Bank of America's Reinstatement Calculations*

Thomas and Varghese attached to their pleading Bank of America's reinstatement calculation dated July 6, 2012, which indicated that they owed $27,777.85 for past payments due plus property inspection fees, foreclosure attorney/trustee fees, foreclosure expenses, and miscellaneous fees for a total reinstatement calculation of $31,643.60. Subsequently, on July 13, Bank of America sent Thomas and Varghese a modified reinstatement calculation.

Thomas and Varghese maintain that the reinstatement calculations provided by Bank of America incorrectly included property inspection fees, foreclosure attorney/trustee fees, and foreclosure expenses. They argue that these costs should have been excluded based on the "promise" next to the asterisk in Bank of America's reinstatement calculations dated July 6 and July 13, 2012, that the escrow fees were being waived.

Bank of America's reinstatement calculations dated July 6 and July 13, 2012, provided that the total fees due were $31,643.60, and $29,956.10, respectively. An asterisk was adjacent to the "Total Due" and "Net Total Due"; below these calculations was the following: "*The Net Total Due reflects the waiver of Foreclosure Attorney/Trustee Fees and/or Title Fees (included within Foreclosure Expenses) incurred in processing the foreclosure. This waiver is to assist you in bringing your loan current and is available if you pay the full Net Total Due. However, if you only pay a portion of the Net Total Due or require other assistance in bringing your loan current, these fees will not be waived. You then will be required to pay the Total Due."

Thomas and Varghese assert that the language adjacent to the asterisk indicated that the net due should have excluded the various foreclosure fees. Although some of this language might be somewhat confusing, it does clearly indicate that the waiver does not apply in situations where only a portion of the net total is paid or the buyers "require other assistance in bringing" their loan current.

Bank of America's actual reinstatement calculations establish that Bank of America did not waive the fees in the present situation. The sums next to the net and

11

total amount due in these calculations clarified that the amount due was more than $27,777.85. Furthermore, under the heading of "Fees Waived in FULL Reinstatement," there is a zero next to title fees and foreclosure attorney/trustee fees; the document stated that the "Total Fees Waived" equaled zero.

Even if the reinstatement calculations were confusing, Thomas and Varghese's SAC establishes that they knew Bank of America had not waived the above mentioned fees. In their SAC, they alleged that Thomas telephoned Cano after receiving this reinstatement calculation and asked about having the attorney and trustee fees waived. As alleged in the SAC, "Mr. Cano advised him to contact QUALITY to request that the attorney's fees be waived." Quality advised Thomas that Bank of America had to make the correction and, as alleged in the SAC, Thomas and Varghese sent a letter to Bank of America "regarding the request to waive attorney's fees, trustee's fees, and foreclosure expenses as mentioned in the Reinstatement Calculation . . . ."

Thus, as alleged in the SAC, Thomas and Varghese knew that Bank of America's reinstatement calculations did not waive all the attorney and foreclosure fees.

## B. *Bank of America's Oral Promises*

Thomas and Varghese claim that Bank of America breached its oral promises when it rejected their payment of $27,777.85 and when it failed to delay the foreclosure in December 2012. Cano made an oral promise to Thomas that Bank of America was waiving the fees, and Carson made a verbal promise that the December foreclosure would be delayed until their request to have the escrow fees waived had been settled. In support of their argument that these oral promises were enforceable they rely on a statute stating that the trustee shall postpone the sale if there is a "mutual agreement, whether oral or in writing[,]" between the beneficiary and the trustor (Civ. Code, § 2924g, subd. (c)(1)(C)),[3] and a court decision, *Bushell v. JPMorgan Chase Bank, N.A.* (2013) 220 Cal.App.4th 915 (*Bushell*).

---

[3] All further unspecified code sections refer to the Civil Code.

Contrary to the contention by Thomas and Varghese, oral promises to modify a mortgage or to postpone a foreclosure sale are not enforceable under the statute of frauds. An agreement for the sale of real property or an interest in real property must be in writing and signed by the party to be charged or by the party's agent in accordance with the statute of frauds. (§§ 1624 [agreement to sell real property must be in writing], 2922 ["mortgage can be created, renewed, or extended, only by writing, executed with the formalities required in the case of a grant of real property"].) "An agreement to modify a contract that is subject to the statute of frauds is also subject to the statute of frauds." (*Secrest v. Security National Mortgage Loan Trust 2002-2* (2008) 167 Cal.App.4th 544, 553; see also § 1698, subd. (a) ["A contract in writing may be modified by a contract in writing"].) Courts have held that gratuitous oral promises to postpone a foreclosure or to modify a mortgage are unenforceable. (*Secrest,* at p. 553 [agreement by lender to forbear from exercising the right of foreclosure under deed of trust is a modification of a contract subject to statute of frauds, and is therefore subject to statute of frauds]; *Karlsen v. American Sav. & Loan Assn.* (1971) 15 Cal.App.3d 112, 120-121 [agreement by lender to forbear from exercising right to foreclose under deed of trust comes within statute of frauds; gratuitous oral promise not to foreclose is unenforceable]; *Raedeke v. Gibraltar Sav. & Loan Assn.* (1974) 10 Cal.3d 665, 673.)

*Bushell, supra,* 220 Cal.App.4th 915 does not overrule the abovementioned authority. In *Bushell,* a borrower complied with a temporary payment plan under the federal Home Affordable Modification Program (HAMP) and was later denied a permanent loan modification. Thomas and Varghese, with little analysis, quote the following from this case: "[W]hen a borrower has alleged that he or she has complied with all the terms of a trial modification plan offered under HAMP—including making all required payments and providing all required documentation—and if the borrower's representations on which the modification is based remain true and correct, the lender or loan servicer (collectively hereafter, the lender) must offer the borrower a good faith permanent modification; and if the lender fails to do so, the borrower may sue the lender,

13

under state law, for breach of contract of the trial modification plan, among other causes of action." (*Bushell*, at p. 918.)

*Bushell, supra,* 220 Cal.App.4th 915 is inapplicable because it addressed a loan modification under HAMP. Directives of the United States Department of the Treasury govern HAMP loans, and these directives *mandate* that lenders offer a permanent modification to borrowers who comply with the terms of a written trial plan. (*West v JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 780, 796-798.) Here, Thomas and Varghese did not assert participation in HAMP; nor did they allege that there was any trial modification plan.

The alleged modification of the reinstatement amount and the promise to postpone the foreclosure were verbal communications by Bank of America and unenforceable under a cause of action for breach of contract. On July 13, 2012, Bank of America did modify in writing the reinstatement amount to $29,956.10. However, as noted, Thomas and Varghese submitted $27,77.85, which was insufficient to reinstate the loan.

**C.** *No Written Notice that the Bank Was Revoking the Waiver of an Escrow Account*

Under the deed of trust, Thomas and Varghese could choose whether to establish an escrow account when taking out their loan. They chose not to establish an escrow account. Bank of America breached the deed of trust, according to Thomas and Varghese, when it failed to provide them with written notice that it was revoking the waiver of an escrow account and requiring them to repay escrow payments made on their behalf.

Section 3, entitled "Funds for Escrow Items," in the deed of trust provided in relevant part: "Borrower shall pay to Lender on the day Periodic Payments are due under the Note, . . . , a sum (the 'Funds') to provide for payments of amounts due for: (a) taxes and assessments and other items . . . (c) premiums for any and all insurance . . . . These items are called 'Escrow Items.' . . . Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay the Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such

14

waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender . . . .  If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount.  Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15, and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3."[4]

Section 9 of the deed of trust read in pertinent part:  "If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, . . . then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument . . . ."  "Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. . . ."

When Thomas and Varghese defaulted on their loan and failed to make the escrow payments, Bank of America established an escrow account and paid the property taxes and insurance on their behalf as permitted under sections 3 and 9 of the deed of trust. The monthly payments increased to include the escrow account.  Quality's notice of default signed March 1, 2012, advised Thomas and Varghese of their failure to pay the escrow items.

Thomas and Varghese cite the language in section 3 of the deed of trust requiring written notice in accordance with section 15.  However, this language refers to a revocation of waiver for any reason; in such a situation, it must be done pursuant to section 15, which requires written notice.  Section 3 plainly carves out a different procedure when an escrow account is being established based on the borrower's failure to

---

**4** Section 15 of the deed of trust stated in relevant part:  "All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. . . ."

15

make timely escrow payments.  In such situations, the lender is not revoking the waiver; the lender is exerting its rights under sections 3 and 9 to establish an escrow account to protect its interest.  Bank of America was not required to provide any written notice that it was revoking the waiver of the escrow account.

**D.  *The Foreclosure***

Thomas and Varghese maintain that Bank of America did not have the power to foreclose, and sold their home prematurely.  They cite section 2924c, subdivision (a)(1).

Thomas and Varghese's reliance on section 2924c, subdivision (a)(1) is not entirely clear but this statute does not apply.  Subdivision (a)(1) of section 2924c provides for reinstatement after default but in order to obtain reinstatement, a debtor must pay the entire amount then due under the deed of trust or mortgage.[5]  Here, the SAC

---

**5**  Section 2924c, subdivision (a)(1) provides:  "(a)(1) Whenever all or a portion of the principal sum of any obligation secured by deed of trust or mortgage on real property . . . has, prior to the maturity date fixed in that obligation, become due or been declared due by reason of default in payment of interest or of any installment of principal, or by reason of failure of trustor or mortgagor to pay, in accordance with the terms of that obligation or of the deed of trust or mortgage, taxes, assessments, premiums for insurance, or advances made by beneficiary or mortgagee in accordance with the terms of that obligation or of the deed of trust or mortgage, the trustor or mortgagor . . . at any time within the period specified in subdivision (e), if the power of sale therein is to be exercised, or, otherwise at any time prior to entry of the decree of foreclosure, may pay to the beneficiary or the mortgagee or their successors in interest, respectively, the entire amount due, at the time payment is tendered, with respect to (A) all amounts of principal, interest, taxes, assessments, insurance premiums, or advances actually known by the beneficiary to be, and that are, in default and shown in the notice of default, under the terms of the deed of trust or mortgage and the obligation secured thereby, (B) all amounts in default on recurring obligations not shown in the notice of default, and (C) all reasonable costs and expenses, subject to subdivision (c), which are actually incurred in enforcing the terms of the obligation, deed of trust, or mortgage, and trustee's or attorney's fees, subject to subdivision (d), other than the portion of principal as would not then be due had no default occurred, and thereby cure the default theretofore existing, and thereupon, all proceedings theretofore had or instituted shall be dismissed or discontinued and the obligation and deed of trust or mortgage shall be reinstated and shall be and remain in force and effect, the same as if the acceleration had not occurred. . . ."

16

acknowledges that Thomas and Varghese never paid the reinstatement amount of $29,956.10.

The SAC does not allege any factual basis to suspect that Bank of America lacked authority to proceed with the foreclosure. (See *Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1156.) Absent a specific factual basis, this claim is invalid and subject to demurrer. (*Jenkins v. JPMorgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 511-513.)

Thomas and Varghese claim that the foreclosure was "premature" because Bank of America's notice of intent to accelerate established that a repayment plan was allowed if 50 percent of the funds due were paid, and their payment of $27,777.85 was more than 50 percent of the funds due.

The notice of intent to accelerate provided in relevant part: "If the default is not cured on or before January 11, 2012, the mortgage payments **will be accelerated** with the full amount remaining accelerated and becoming due and payable in full, and foreclosure proceedings will be initiated at that time. . . ." "If you are unable to cure the default on or before January 11, 2012, Bank of America, N.A. wants you to be aware of various options that may be available to you . . . to prevent a foreclosure sale of your property. For example:" "It is possible that you may be eligible for some form of payment assistance through Bank of America, N.A. Our basic plan requires that Bank of America, N.A. receive, up front, at least 1/2 of the amount necessary to bring the account current, and that the balance of the overdue amount be paid, along with the regular monthly payment, over a defined period of time. Other repayment plans also are available."

The above notice did not indicate that Bank of America was offering Thomas and Varghese a repayment plan. Rather, the notice advised that a repayment plan might be available. There is no allegation in the SAC that Bank of America approved such a repayment plan for Thomas and Varghese.

**E.** *Other Alleged Breaches by Bank of America*

Thomas and Varghese also claim that their nonperformance was excused because Bank of America breached the loan modification agreement by underfunding the escrow,

17

failing to calculate principal and interest correctly, and failing to disclose the payment schedule as required by the Truth-in-Lending Act. The SAC does not include allegations demonstrating how the loan modification agreement was underfunded, how the principal and interest payments were improperly calculated,[6] or how the payment schedule was improper. These conclusory allegations of alleged breaches by Bank of America are devoid of any supporting factual allegations and are insufficient to withstand demurrer. (See, e.g., *Faulkner v. California Toll Bridge Authority* (1953) 40 Cal.2d 317, 329 ["[a]llegations that the acts of a commission or board were 'arbitrary, capricious, fraudulent, wrongful and unlawful,' like other adjectival descriptions of such proceedings, constitute mere conclusions of law which are not to be deemed admitted by a demurrer"]; *Stonehouse Homes LLC v. City of Madre* (2008) 167 Cal.App.4th 531, 539 [conclusory allegations do not withstand demurrer].)

In their reply brief, Thomas and Varghese assert that the actual amount due to bring their loan current was $16,167.60 (9 x $1,796.40), not $27,777.85, as stated in Bank of America's reinstatement calculations dated July 6 and 13, 2012. However, Thomas and Varghese cannot now object to the accuracy of Bank of America's accounting when the SAC repeatedly stated that $27,777.85 reflected the "correct reinstatement amount." "The admission of fact in a pleading is a 'judicial admission.' " (*Valerio v. Andrew Youngquist Construction* (2002) 103 Cal.App.4th 1264, 1271.) " ' "A judicial admission in a pleading . . . is not merely evidence of a fact; it is conclusive concession of the truth of a matter which has the effect of removing it from the issues . . . ." ' " (*Addy v. Bliss & Glennon* (1996) 44 Cal.App.4th 205, 218.)

---

[6] With regard to the calculations, the SAC states: "The calculations were totally incorrect in that the Reinstatement Calculation listed incorrect monthly payments due. It listed four (4) months of payments due at $3,197.70 per month, when the true payments were $1,796.40 per the [loan modification agreement]."

As noted above, Thomas and Varghese did not establish an escrow account when they first signed the Note. Once Thomas and Varghese defaulted, Bank of America had the right to, and did, establish an escrow account to pay the property taxes and insurance. The SAC does not set forth any factual allegations to demonstrate that the monthly payments exceeded these additional charges.

Additionally, Thomas and Varghese claim that Bank of America breached the loan agreement by failing to inform them in a timely manner that it had refused to accept the $27,777.85. However, Thomas's letter dated July 30, 2012, to Bank of America, which is attached to the SAC, establishes that Bank of America told him on the same day that he submitted the funds that he had to pay attorney and trustee fees.

Finally, Thomas and Varghese argue that Bank of America's breaches deprived them of their rights under section 2924c, subdivision (a)(2).[7] They claim that Bank of America was required to rescind the notice of default within 21 days of receiving their payment of $27,777.85, and Bank of America never acknowledged receipt of this sum. This statute applies only if the default is cured and, as repeatedly stated, Thomas and Varghese did not submit the total reinstatement amount.

Since Thomas and Varghese did not perform and have no valid excuse for their nonperformance, their SAC lacks an essential element of a cause of action for breach of contract.

### III. *Promissory Estoppel*

#### A. *The Elements of Promissory Estoppel*

Thomas and Varghese alleged that Bank of America made a clear and unambiguous promise to accept a reinstatement amount that did not include the escrow fees and other foreclosure expenses and they reasonably and foreseeably relied on this promise. They suffered injuries, according to the SAC, "including wrongful foreclosure of the property, damage to their credit, additional income tax liability, costs and expenses incurred to attempt to prevent and fight the wrongful foreclosure, moving expenses, and

---

[7] This statute provides: "If the trustor, mortgagor, or other person authorized to cure the default pursuant to this subdivision does cure the default, the beneficiary or mortgagee or the agent for the beneficiary or mortgagee shall, within 21 days following the reinstatement, execute and deliver to the trustee a notice of rescission which rescinds the declaration of default and demand for sale and advises the trustee of the date of reinstatement. The trustee shall cause the notice of rescission to be recorded within 30 days of receipt of the notice of rescission and of all allowable fees and costs." (§ 2924c, subd. (a)(2).)

19

emotional distress."  In their appellate brief, they also argue that their reliance resulted in their failing to "avail themselves of other loss-mitigation options in the meantime while their application was pending such as filing for bankruptcy[,] obtaining a co-signer [or] pursuing a short-sale."

"In California, under the doctrine of promissory estoppel, 'A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.' "  (*Kajima/Ray Wilson v. Los Angeles County Metropolitan Transportation Authority* (2000) 23 Cal.4th 305, 310.) The elements of a promissory estoppel claim are "(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [the] reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his [or her] reliance."  (*Laks v. Coast Federal Savings & Loan Assn.* (1976) 60 Cal.App.3d 885, 890.)

**B.  *The Deed of Trust and Loan Modification Agreement***

The SAC alleged that the Note, deed of trust, and loan modification agreement obligated Bank of America to accept the reinstatement amount to prevent foreclosure.

The deed of trust did require Bank of America to provide Thomas and Varghese with the right to reinstate their loan if they paid the actual amount due, including, "but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument . . . ."  No language in the deed of trust or loan modification agreement made an unambiguous promise that Thomas and Varghese were entitled to reinstatement based on an amount that excluded foreclosure fees.

**C.  *Reinstatement Calculations***

Thomas and Varghese asserted in their SAC that Bank of America's reinstatement calculations "made a promise clear and unambiguous that 'The Net Total Due' reflects 'the waiver of Foreclosure Attorney/Trust Fees and/or title fees (included within Foreclosure Expenses) incurred in processing the foreclosure.' "  (Underline omitted.)

As noted earlier, the reinstatement calculations did not clearly and unambiguously promise to waive the fees, as the documents specified that the amount of fees waived was zero. Accordingly, this alleged promise could not be the basis of a promissory estoppel claim.

**D. *Cano's Oral Promise***

Thomas and Varghese alleged in their SAC that Cano made a clear and unambiguous verbal promise that the correct reinstatement amount was $27,777.85. Bank of America contends that this promise cannot be the basis for promissory estoppel because it was a gratuitous oral promise, a preliminary negotiation, and unenforceable under the statute of frauds.

Although an oral promise to modify a mortgage loan or deed of trust must be in writing, "[a] party is estopped to assert the statute of frauds as a defense 'where [the] party, by words or conduct, represents that he [or she] will stand by his [or her] oral agreement, and the other party, in reliance upon that representation, changes his [or her] position, to his [or her] detriment.' " (*Garcia v. World Savings, FSB* (2010) 183 Cal.App.4th 1031, 1040, fn. 10 & 1041 [borrowers acted to "procur[e] a high cost, high interest loan by using other property they owned as security" in order to cure default in reliance on lender's promise to delay foreclosure]; *Aceves v. U.S. Bank N.A.* (2011) 192 Cal.App.4th 218, 225-227 [borrower alleged that in reliance on a bank's promise to work with her to reinstate and modify her loan if she did not proceed with her bankruptcy, she did not attempt to save her home by converting her existing chapter 7 bankruptcy to a chapter 13 bankruptcy] ; see also § 1698, subd. (d) ["Nothing in this section precludes in an appropriate case the application of rules of law concerning estoppel"].) Similarly, promissory estoppel makes a promise binding, under certain circumstances, "without consideration in the usual sense of something bargained for and given in exchange." (*Youngman v. Nevada Irrigation Dist.* (1969) 70 Cal.2d 240, 249.) Thus, simply because a promise lacked consideration or was oral does not immediately foreclose a promissory estoppel claim.

21

Here, however, the claim for promissory estoppel based on Cano's oral promise fails because Thomas and Varghese have not alleged facts supporting reasonable reliance. Generally, the issue whether the reliance is reasonable is a question of fact and cannot be decided on demurrer, but whether a party's reliance is reasonable may be decided as one of law if reasonable minds could come to only one conclusion on the basis of the facts alleged. (See *Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1239; see also *Joffe v. City of Huntington Park* (2011) 201 Cal.App.4th 492, 513.)

Thomas admitted that Cano informed him on July 27, 2012, the same day that Thomas and Varghese submitted the payment of $27,777.85 to Bank of America, that Cano's manager advised him to call Thomas and Varghese and inform them that they had to pay attorney and trustee fees before 3:00 p.m. on July 27. Thus, it was not reasonable for them to rely on an oral statement that was almost immediately retracted.

Thomas and Varghese contend that their reliance was reasonable because Carson at Bank of America promised in October 2012, that the bank had removed the foreclosure status of the property.[8] These allegations, however, do not show that it was reasonable for Thomas and Varghese to rely on Cano's oral statements. Carson's statements indicated that the foreclosure had been postponed but her comments also confirmed that Bank of America had not agreed to a reinstatement figure of only $27,777.85. Carson expressly told them that their cashier's check in the amount of $27,777.85 had been returned. Furthermore, Thomas and Varghese confirm in their SAC that they sent numerous letters to Bank of America between July 27, 2012, and December 2012, requesting the bank to waive the attorney and foreclosure fees, making it clear they understood that Cano's oral promise to waive the fees had not been approved by the bank. Their reliance on Cano's oral statement that he withdrew the following day was patently unreasonable.

---

[8] The SAC does not allege Carson's communication as a basis for the promissory estoppel claim.

22

Accordingly, Thomas and Varghese cannot state a claim for promissory estoppel based on Cano's oral statements, the Note, deed of trust, or reinstatement calculations.

## IV. *Amending the Complaint*

Thomas and Varghese requested leave of the trial court to file their proposed third amended complaint, which included causes of action for breach of contract, breach of the implied agreement, promissory estoppel, slander of title, wrongful foreclosure, violations of various statutes, and injunctive relief. On appeal, they claim that the trial court abused its discretion when it denied their request. They maintain that the amended pleading added more factual allegations and added claims that Bank of America violated various statutes, including Business and Professions Code, section 17200 et seq.

The trial court in refusing to permit Thomas and Varghese to file their third amended complaint noted that they had the burden of showing that the ends of justice would be served by the amendment. (*Plummer v. Superior Court* (1963) 212 Cal.App.2d 841, 843.) The court concluded that they had not met their burden.

Specifically, the trial court found that Bank of America had made a strong showing of prejudice. Furthermore, the court concluded that the proposed third amended complaint failed to remedy the defects identified in Bank of America's demurrer to the SAC. When reviewing the new causes of action, the court concluded that the proposed new causes of action (based on violating section 2923.5, the Truth in Lending Act, 18 U.S.C. § 1962, and Bus. & Prof. Code, § 17200 et seq.) had no merit.

It is the plaintiff's burden to show the reviewing court that there is a reasonable possibility that the defect in the pleading can be cured by amendment. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) "On appeal, there is a presumption in favor of the actions of the trial court to the effect that its discretion was properly exercised, and the burden and responsibility is on the appellant to affirmatively establish an abuse of that discretion." (*Mesler v. Bragg Management Co.* (1990) 219 Cal.App.3d 983, 991.)

Thomas and Varghese have not met their burden as to any of their causes of action except for their claim based on promissory estoppel. Their argument on appeal cites to their entire proposed third amended complaint and then they simply declare in a

conclusory fashion that they should be permitted to amend in the interests of justice. With regard to their causes of action other than promissory estoppel, they fail to provide any cognizable legal argument or discuss the substantive legal issues involved in the trial court's ruling.

" 'It is an established rule of appellate procedure that an appellant must present a factual analysis and legal authority on each point made or the argument may be deemed waived. [Citations.]' [Citation.]" (*Gunn v. Mariners Church, Inc.* (2008) 167 Cal.App.4th 206, 217-218.) Thomas and Varghese's failure to provide any cogent analysis of their argument waives their claim on appeal that they should be able to amend their pleading. (*Bullock v. Philip Morris USA, Inc.* (2008) 159 Cal.App.4th 655, 685 ["appellant must affirmatively demonstrate error through reasoned argument, citation to the appellate record, and discussion of legal authority"].) We have no obligation to make an independent review of the proposed third amended complaint to determine whether there is any error or grounds for reversing the trial court's ruling. (See *Guthrey v. State of California* (1998) 63 Cal.App.4th 1108, 1115.)

However, under our holding in *Jolley v. Chase Home Finance, LLC* (2013) 213 Cal.App.4th 872 (*Jolley*), there is a reasonable probability that Thomas and Varghese could allege a cognizable claim for promissory estoppel. In *Jolley*, JPMorgan Chase (Chase) had assumed the assets of its predecessor, Washington Mutual Bank (WaMu). (*Id.* at pp. 877-878.) The plaintiff had a construction loan with WaMu, which WaMu agreed to modify to permit the plaintiff to complete construction. (*Id.* at pp. 877-879.) He also had dealings with a Chase employee who told him that there was a high probability Chase would be able to modify the loan to permit him to avoid foreclosure, and that he would be able to roll the construction loan into a fully amortized conventional loan when construction was completed. (*Id.* at p. 881.) When plaintiff stopped making payments on the original loan, Chase demanded payment in full and would not agree to a loan modification; its trustee recorded a notice of default and then a notice of sale. (*Id.* at pp. 878-881.)

24

The plaintiff in *Jolley, supra,* 213 Cal.App.4th 872, sued Chase prior to the foreclosure sale, and the trial court granted Chase's motion for summary judgment. (*Id.* at pp. 884-885.) We reversed as to various causes of action, including those for fraud, promissory estoppel, and negligence. (*Id.* at pp. 893-908.) We concluded that the plaintiff's allegations that the bank representative made "frequent reassurances . . . that a modification was forthcoming induced [the plaintiff] to rely" and created "a triable issue of fact whether [the bank] has potential liability for its own conduct under a theory of promissory estoppel." (*Id.* at p. 897.)

*Jolley* involved a construction loan, not a residential home loan, but its reasoning applies to the present case. Under *Jolley,* Thomas and Varghese could make a claim for promissory estoppel based on Bank of America's promises to postpone the foreclosure, especially in light of the inconsistent information Thomas and Varghese received regarding the amount they owed. A lender has a duty to a borrower to not make material misrepresentations about the date, time, or status of a foreclosure sale. (*Lueras v. BAC* (2013) 221 Cal.App.4th 49, 68; see Civ. Code, § 171, subd. (2).) Moreover, as we noted in *Jolley*, it "is well settled that an opinion may be actionable when it is made by a party who ' "possess[es] superior knowledge" ' and that it is "[e]qually well recognized . . . that there may be liability for an opinion where it is 'expressed in a manner implying a factual basis which does not exist.' " (*Jolley, supra,* 213 Cal.App.4th at pp. 892-893.)

Leave to amend must be granted if "there is a reasonable possibility that the defect can be cured by amendment[.]" (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865.) Here, there is a reasonable possibility that Thomas and Varghese could allege a claim for promissory estoppel based on Bank of America's promise it was postponing the foreclosure sale while it was still considering their request to waive the fees. Reliance was reasonable in light of the inconsistent information they received from Bank of America about the amount they owed, the reinstatement calculations indicating that Bank of America did waive the fees in some situations when the borrowers paid the full net total due, Cano's oral promise that the fees were being waived, the evidence indicating that the borrowers never received the returned check, and Carson's express statement that

25

the foreclosure status of their home "was 'taken away.' " Thomas and Varghese assert in their appellate briefs that they detrimentally relied on the promise to postpone the foreclosure sale, as they had the additional $2,178.25 sufficient funds and would have paid the sum due had they known that the bank was going to foreclose, they would have pursued a short sale, and/or they were induced to forego acquiring the additional $2,178.25.

We thus conclude that Thomas and Varghese should be permitted another opportunity to amend to cure the defects in their promissory estoppel claim.

## DISPOSITION

The judgment as to the breach of contract claim is affirmed. The judgment is reversed as to the promissory estoppel claim and the matter is remanded to the trial court with directions to grant Thomas and Varghese leave to file an amended complaint to allege promissory estoppel. Bank of America is to pay the costs of appeal.

_____
Kline, P.J.

We concur:


_____
Richman, J.


_____
Stewart, J.


*Thomas et al. v. Bank of America N.A.* (A142224)

27